UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN OLIVIER SILVA-TORUNO,

           Petitioner,

     v.                             Case No.:  2:26-cv-199-SPC-DNF

GARRETT RIPA *et al.*.

           Respondents,

_____/

## OPINION AND ORDER

Before the Court are Kevin Olivier Silva-Toruno's Petition for Writ of Habeas Corpus (Doc. 1), the federal government's response (Doc. 5), and Silva-Toruno's reply (Doc. 6).  For the below reasons, the Court grants the petition.

### A. Background

Silva-Toruno is a native and citizen of Nicaragua who entered the United States on March 11, 2022, to seek asylum.  That day, the Department of Homeland Security ("DHS") issued a notice to appear and released him into the country.  Since then, Silva-Toruno applied for asylum and obtained work authorization and a Florida driver's license.  He has stable employment and no criminal history.

On September 19, 2025, Silva-Toruno appeared at a Miami immigration court for his master calendar hearing.  DHS moved to dismiss the removal case, and the immigration judge granted the request.  When Silva-Toruno left the

courtroom, Immigration and Customs Enforcement ("ICE") agents arrested him and designated him for expedited removal. When a noncitizen in expedited removal proceedings expresses an intent to apply for asylum or a fear of persecution, the law requires referral to an asylum officer for an interview. § 1225(b)(1)(B)(ii) states, "If the officer determines at the time of the interview that an alien has a credible fear of persecution…, the alien shall be detained for further consideration of the application for asylum."

After an asylum officer determined Silva-Toruno demonstrated a credible fear of persecution or torture, ICE reopened the original removal proceeding, and the Executive Office of Immigration Review promptly set another hearing. On November 18, 2025, an immigration judge denied Silva-Toruno's requests for asylum, withholding of removal, and protection under the Convention Against Torture and ordered him removed. Silva-Toruno has appealed that decision to the Board of Immigration Appeals ("BIA").

On January 22, 2026, an immigration judge found he lacked jurisdiction to release Silva-Toruno on bond under *Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019), which held that a noncitizen who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond. The immigration judge also found that Silva-Toruno is "not a suitable bail risk" because he is under

an order of removal that is on appeal. (Doc. 5-1 at 11). Silva-Toruno is currently detained at Alligator Alcatraz.

Silva-Toruno's habeas claims are based on a misunderstanding of the respondents' legal justification for his detention. His petition claims the respondents are improperly detaining him under § 1225(b)(2) and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).[1] The government clarifies its position in its response. Silva-Toruno is detained under § 1225(b)(1)(B)(ii) and *Matter of M-S-*.

## B. Legal Framework for Expedited Removal

Given the procedural background of Silva-Toruno's immigration proceedings and the government's justification for detaining him, an understanding of expedited removal is useful. The INA establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays out, but only if the noncitizen demonstrates "that the release

---

[1] This has become well-trodden ground over the last year or so. The vast majority of courts to consider *Matter of Yahure Hurtado*—including this one—disagree with it, but that is not the issue presented here.

would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 61, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied[.]" Benjamine C.

4

Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025). The next day, DHS published a notice expanding the application of expedited removal. Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 152-53, 2025 WL 2494908, at *5 (D.D.C. 2025). The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

*Id.*

## C. Jurisdiction

The respondents argue the INA divests the Court of jurisdiction over Silva-Toruno's petition. They point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title,

5

> no court shall have jurisdiction to hear any cause or claim
> by or on behalf of any alien arising from the decision or
> action by the Attorney General to commence proceedings,
> adjudicate cases, or execute removal orders against any
> alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

Silva-Toruno does not challenge the commencement, adjudication, or execution of a removal proceeding. As the Court has explained in prior cases, § 1252(g) of the INA does not divest it of jurisdiction to consider the legal basis of a noncitizen's detention under principles of habeas corpus. *See Hinojosa Garcia v. Noem*, No. 2:25-cv-879-SPC-NPM, 2025 WL 3041895 (M.D. Fla. Oct. 31, 2025) and *Vasquez Carcamo v. Noem*, 2:25-cv-922-SPC-NPM, 2025 WL 3119263 (M.D. Fla. Nov. 7, 2025). Silva-Toruno has properly appealed his

removal order to the BIA.  The only issue before this Court is the lawfulness of his detention.

### D. The Petitioner's Claims

Silva-Toruno asserts the respondents are detaining him in violation of the INA, its implementing regulations, and the Fifth Amendment.  The respondents argue § 1225(b)(1)(B)(ii) makes Silva-Toruno's mandatory while his asylum claim works its way through the immigration courts.

The Court finds Silva-Toruno's due process claim dispositive.  The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976).  Courts look to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Silva-Toruno's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. DHS found Silva-Toruno eligible for release when he entered the country in 2022. Since then, Silva-Toruno has kept his criminal record clean, and he proved he is no flight risk by attending his removal hearing.

ICE arrested Silva-Toruno and issued an expedited removal order without any new or additional information suggesting he is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have been paroled in the United States for more than two years from the class eligible for expedited removal). And while DHS eventually moved Silva-Toruno back into section 240 removal proceedings, the damage to his liberty rights had been done. The respondents are still using the expedited removal order as its justification for subjecting Silva-Toruno to mandatory detention.

8

What is more, the Court recognizes significant value in additional safeguards, like the ones DHS attempted to circumvent by dismissing the original removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress. The January 22, 2026 bond hearing was not a meaningful safeguard against unlawful deprivation of liberty because denial of bond was a foregone conclusion. *Matter of M-S-* and DHS's misapplication of § 1225(b)(1) guaranteed the outcome—the immigration court could not release Silva-Toruno on bond, no matter the facts. And while the immigration judge found Silva-Toruno was not a "suitable bail risk," he has no opportunity for review of that finding because according to the Board of Immigration Appeals, the immigration judge lacked jurisdiction to make that determination.

Third, the government has not established any legitimate interest in Silva-Toruno's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Silva-Toruno's detention serves neither purpose. The immigration official who considered his circumstances in 2022 determined that he should be released, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings. Silva-Toruno is currently appealing his removal order. If he loses that appeal, he will be subject to a presumptively reasonable

9

180-day detention period, during which the government can arrange and execute his removal.  *See id.* at 701.  Until then, Silva-Toruno is only subject to mandatory detention because the government took affirmative steps to ensure he would not have a meaningful opportunity to challenge the lawfulness and necessity of detention.

The Court finds that ICE violated Silva-Toruno's right to due process by revoking his release, designating him for expedited removal, and detaining him without reasonable notice and a meaningful opportunity to be heard.  *See Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 160, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

### E. Conclusion

For the reasons stated above, the Court finds Silva-Toruno's detention violates his right to due process under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED**:

Kevin Olivier Silva-Toruno's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

1.    The respondents shall release Silva-Toruno from custody within 24 hours of this Order.  The respondents shall facilitate Silva-Toruno's transportation from the detention facility by notifying his counsel when and where he can be collected.

2.    All other requested relief is **DENIED**.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 24, 2026.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: FTMP-1

11